UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID AGEMA *et al.*,

      Plaintiffs,                        Case No. 1:12-cv-417

v                                     HON. JANET T. NEFF

CITY OF ALLEGAN *et al.*,

      Defendants.
_____/

## OPINION

Now pending before the Court are two motions to dismiss certain claims from this case:  the "Joint Motion of Defendants Council on American-Islamic Relations, Dawud Walid, People for the American Way, and Michael B. Keegan for Dismissal Under FED. R. CIV. P. 12(b)(6), Pursuant to the *Noerr-Pennington* Doctrine" (Dkt 112); and "Defendants City of Allegan and Rick Hoyer's Motion to Dismiss Plaintiffs' First Amended Complaint Under FED. R. CIV. P. 12(b)(6)" (Dkt 118). Having conducted a Pre-Motion Conference in this matter and having fully considered the parties' written briefs, the Court finds that the relevant facts and arguments have been adequately presented and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d).  After careful consideration of the parties' arguments and applicable law, the Court grants both motions.

## I.  BACKGROUND

This case arises from a January 26, 2012 event organized by Plaintiffs David Agema, Elizabeth Griffin, Mark Gurley, and Willis Sage at the Allegan High School, an event that featured Kamal Saleem (Saleem) and Plaintiff Agema as speakers (Dkt 114, Joint Statement of Material Facts

[JSMF][1] ¶ 1).  According to Plaintiffs, "Saleem heads Koome Ministries, a nonprofit organization which teaches about the dangers of radical Islam" (Dkt 49, First Amend. Compl. ¶ 75).  Plaintiffs allege that Saleem "has a unique perspective on the internal threat to America posed by Sharia law and radical Muslims as he was once a Muslim involved in terrorist activities who has since transformed himself and converted to Christianity" (*id.* ¶ 76).  On January 26, 2012, Plaintiff Agema was the Michigan State Representative for the 74th District serving in the Michigan House of Representatives, and Plaintiff Sage was a County Commissioner for the County of Allegan, Michigan (*id.* ¶¶ 12, 18).  Plaintiff Griffin is identified as a Chapter Leader for the organization "ACT! for America" (*id.* ¶ 15).  Plaintiff Gurley paid for the airfare of Saleem and his bodyguard to facilitate their attendance at the event (*id.* ¶ 17).

As of January 26, 2012, Kevin Harness was the Superintendent of the Allegan Public School District ("the School District") and Jim Mallard was the Principal of Allegan High School (JSMF ¶¶ 5-6).  Commissioner Sage met with Principal Mallard for the purpose of renting a room at Allegan High School for the event (*id.* ¶ 7).  Sage and Mallard agreed to the rental of a room at Allegan High School for Plaintiffs' event (*id.* ¶ 8).  Sage paid $90 to rent the room (Dkt 49, First Amend. Compl. ¶ 21).

Commissioner Sage also met with City of Allegan Police Chief Rick Hoyer (Dkt 49, First Amend. Compl. ¶ 83).  Plaintiffs allege that Sage explained to Chief Hoyer that "Saleem is

---

[1] While acknowledging that this Court is required to accept as true the well-pleaded factual allegations in Plaintiffs' First Amended Complaint for purposes of Defendants' motions at bar, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), the parties have also stated certain agreed-upon material facts, a statement upon which this Court has relied unless otherwise noted.

considered by some to be 'an ex-terrorist who has converted to Christianity'" (*id.* ¶ 85). "Sage requested the presence of two officers for the [] event" (*id.* ¶ 86).

On or about January 24, 2012, Dawud Walid (Walid), Executive Director of Council on American-Islamic Relations, Michigan (CAIR-MI); and Michael B. Keegan (Keegan), President of People For The American Way (PFAW), authored a letter to Superintendent Harness ("the Letter") (JSMF ¶ 10). The body of the Letter reads as follows:

> It has come to our attention that on Thursday, the Allegan High School Event Center will be used as a venue for a man that we believe spreads hatred and intolerance.
>
> Kamal Saleem, aka Khodor Shami, who purports to be an "ex-terrorist" that entered into America "illegally," regularly voices his disdain for the Islamic faith, comparing it to Satan. While Saleem has every right to his bona fide beliefs, even if bigoted, we believe that the misinformation he conveys about American Muslims as a fifth column in our country is not only inaccurate but also promotes intolerance. Moreover, Saleem's statements about his own background and affiliations are highly dubious.
>
> Outside of Saleem's ridiculous claim that he is the descendent of the "Grand Wazir" of Islam, a fictitious title as there has never been a Pope for Muslims, his claims of being an "ex-terrorist" that entered America illegally are outright fabrications. Immigration Customs Enforcement [sic] (ICE) and the Federal Bureau of Investigations [sic] (FBI) simply do not let confessed terrorists, who enter our nation illegally, freely roam America because of a professed conversion. Saleem would have been detained and most likely deported if his claims held any substance.
>
> We are asking that you not allow a charlatan that promotes misinformation and division among fellow Americans to use any Allegan school building. Allegan's schools have the intended purpose of educating our youth to prepare them to be competitive in a global economy and to embrace the American values of diversity and pluralism. Providing a venue for Saleem runs counter to that purpose.

(*id.* ¶ 11.)

The January 26, 2012 event was scheduled to take place at Allegan High School from 6:00 p.m. to 9:00 p.m. (JSMF ¶ 9). City of Allegan police officers, including Chief Hoyer, arrived at Allegan High School before the event (*id.* ¶¶ 4, 12). Shortly before the event was to take place, a

woman approached the police officers at Allegan High School and "stated that Kamal Saleem had a $25 million dollar bounty on his head" (Dkt 49, First Amend. Compl. ¶ 114). An Allegan police officer talked with Jones, Saleem's bodyguard, who did not deny that a bounty existed (*id.* ¶¶ 119-122). "Jones further stated that there had been death threats directed toward Kamal Saleem from Islamic extremists in the past" (*id.* ¶ 124). While the event was still in progress, Chief Hoyer ordered Plaintiffs to shut down the event (JSMF ¶ 13). Other events were occurring simultaneously in other locations within the Allegan High School building while Saleem was speaking (*id.* ¶ 14).

Plaintiffs initiated this civil rights action under 42 U.S.C. § 1983 with the filing of a Complaint on April 30, 2012 (Dkt 1). On January 8, 2013, with leave of the Court, Plaintiffs amended their Complaint. Their First Amended Complaint (Dkt 49) names nine Defendants: the City of Allegan, Chief Hoyer, the School District, Superintendent Harness, Principal Mallard, CAIR-MI, Walid, PFAW and Keegan. "Defendant Hoyer is sued in his official capacity as chief of police for the City Police Department" (*id.* ¶ 33).

In their First Amended Complaint, Plaintiffs assert four "claims for relief" under the following legal theories:

Count I:     "Freedom of Speech—First Amendment against Defendants City; School District; Chief of Police, Rick Hoyer; Superintendent Kevin Harness; and Principal Jim Mallard"

Count II:    "Freedom of Assembly—First Amendment against Defendants City; School District; Chief of Police, Rick Hoyer; Superintendent Kevin Harness; and Principal Jim Mallard"

Count III:   "Breach of Contract against School District"

Count IV:    "Tortious Interference of Contract against Defendants CAIR-MI, Dawud Walid, People For the American Way, and Michael B. Keegan"

4

(*id.*).  The parties have since stipulated to dismissing Superintendent Harness from this case (Dkt 130).

In April 2013, the Court conducted a Pre-Motion Conference on two proposed dispositive motions and issued a briefing schedule, permitting Defendants Hoyer and the City of Allegan to proceed with their motion to dismiss Counts I and II, and limiting Defendants CAIR-MI, Walid, PFAW and Keegan to briefing application of the *Noerr-Pennington* doctrine to Count IV, the only claim in which they are named (Order, Dkt 100).[2] Defendants CAIR-MI, Walid, PFAW and Keegan subsequently filed their joint motion to dismiss (Dkt 112), to which a response (Dkt 115) and reply (Dkt 116) have been filed.  Defendants Hoyer and the City of Allegan have also since filed their motion to dismiss (Dkt 118), to which a response (Dkt 120) and reply (Dkt 121) have been filed. Defendants Hoyer and the City of Allegan also submitted an additional authority in support of their motion (Dkt 136).

## II.  ANALYSIS

### A.  Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Federal Rule of Civil Procedure 12(b)(6), in turn, permits dismissal for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When, as here, a document is referred to in the pleadings and is integral to the claims, "it may be considered without converting a motion to dismiss into one for summary

---

[2]Defendants Allegan Public School District, Kevin Harness and Jim Mallard ("the School District Defendants") have also since filed a request for a pre-motion conference regarding the three counts in which they are named (Dkt 126).

judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

A complaint will survive a motion to dismiss if the plaintiff alleges facts that "state a claim to relief that is plausible on its face" and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Further, "the court need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citation and internal quotation marks omitted). Making a determination of plausibility "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. Defendants Hoyer and the City of Allegan's Motion to Dismiss

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Plaintiffs allege that Defendants Hoyer and the City of Allegan deprived

them of their rights under the First Amendment, specifically, their rights to Freedom of Speech (Count I) and Freedom of Assembly (Count II).

**1.     Defendant Hoyer**

Defendants Hoyer and the City of Allegan argue that this Court should dismiss Plaintiffs' claims against Hoyer because the claims are brought against Hoyer in only his official capacity and are therefore redundant of Plaintiffs' claims against the City (Dkt 119 at 9-12 (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 509 (6th Cir. 1996)).

Plaintiffs, who concede that they have not yet alleged any individual-capacity claims against Defendant Hoyer (Dkt 120 at 28 n.4), respond that the official-capacity claims against Defendant Hoyer are not redundant of the claims against Defendant City of Allegan because Hoyer "sets and implements acts, policies, practices, customs and/or procedures of the Allegan Police Department" (*id.* at 27-29 (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1055 n.5 (6th Cir. 1996)).

Defendants Hoyer and the City of Allegan's argument has merit.

"There is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra*, local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as

a suit against the entity." *Kentucky*, 473 U.S. at 165-66; *see also United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 752 (6th Cir. 2004) ("Appellants' remaining § 1983 claim is against O'Leary in his official capacity as Shelby County Sheriff, and, as the district court noted, this claim is really one against Shelby County itself.").

Consequently, the Court agrees with Defendants Hoyer and the City of Allegan that Plaintiffs' claims against Defendant Hoyer in this case are properly dismissed. *See, e.g., Jackson v. Shelby County Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. 2008) ("[T]he district court properly granted summary judgment to the defendants on the claims against the sheriff in his official capacity because those claims mirror the claims against the County, and are therefore redundant."); *Doe*, 103 F.3d at 509 (affirming the dismissal of the official-capacity claims because such suits are "treated as a suit against the municipality").

## 2.  Defendant City of Allegan

### a.  *Policy or Custom*

A municipal corporation is a "person" within the meaning of § 1983. *Monell*, 436 U.S. at 690-91; *Holloway v. Brush,* 220 F.3d 767, 772 (6th Cir. 2000) (en banc). The liability of a local government under § 1983 depends solely on whether the plaintiff's constitutional rights have been violated as a result of a "policy" or "custom" attributable to the government. *Holloway, supra.* The Sixth Circuit has instructed that the plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010) (quoting *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005)); *see also Garner v. Memphis*

*Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993); *Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir. 1987).

Defendants Hoyer and the City of Allegan argue that Plaintiffs' claims against the City of Allegan fail as a matter of law because Plaintiffs have not pleaded that a City custom or policy deprived Plaintiffs of their Constitutional rights (Dkt 119 at 12-13 (citing *Monell*, 436 U.S. at 694)). In response, Plaintiffs concede that Defendant City of Allegan does not have any sort of written policy, procedure or guideline pertaining to the closing of an event; however, Plaintiffs emphasize that there is no requirement that a custom, act, practice, policy or procedure be written, and Plaintiffs argue that they sufficiently alleged the City's "custom of allowing unfettered discretion to its agents and employees" in deciding whether to shut down an event (Dkt 120 at 13-14, 26 (citing Dkt 49, First Amend. Compl. ¶¶ 140-46)).

Defendants Hoyer and the City of Allegan's argument has merit.

Local governing bodies can be sued under § 1983 for monetary, declaratory, or injunctive relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. "[A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels. *Id.* at 690-91. "If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of

official government 'policy' as that term is commonly understood." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)

"On the other hand, the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* A plaintiff "must show that the [governmental entity] *itself* is the wrongdoer." *Vereecke*, 609 F.3d at 403 (citation omitted; emphasis original).

Here, Plaintiffs allege in numerous places throughout their First Amended Complaint that Defendant Hoyer acted pursuant to "the City's policies, practices, customs and/or procedures" (Dkt 49, First Amend. Compl. ¶¶ 1-2, 5, 8, 25-26, 28, 31, 33, 37, 197-99, 203, 207). The only paragraph specifically identifying a policy, practice, custom or procedure, however, is Paragraph 146, where Plaintiffs allege a "policy, procedure, practice, and/or custom of issuing unfettered discretion to its agents, servants, and/or employees" (*id.* ¶ 146). Plaintiffs' reliance on a policy, procedure, practice, and/or custom of issuing unfettered discretion to its agents, servants, and/or employees does not state a plausible claim for relief under § 1983. "The fact that a particular official ... has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 481-82. *See, e.g., Miller v. Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005) (indicating that the plaintiff "conflates decisionmaking with policymaking"); *see also Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (instructing that "[d]iscretion to act is not to be confused with policymaking authority; no municipal

liability results where an official merely has discretion to act because subjecting a municipality to liability in such a situation would be 'indistinguishable' from respondeat superior liability"). In short, Plaintiffs' First Amended Complaint does not state a plausible theory for holding Defendant City of Allegan liable under § 1983.

        b.    *Constitutional Deprivation*

Even assuming arguendo that Plaintiffs' First Amended Complaint states a plausible theory for holding Defendant City of Allegan liable under § 1983, Plaintiffs' allegations further fail to state a constitutional deprivation. "There can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act." *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.")).

The parties agree that the Allegan Public School District operates Allegan High School and is a public entity established pursuant to, and organized under, the laws of the State of Michigan (JSMF ¶ 2). The Supreme Court has adopted a forum analysis as a means of determining when the government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985). The extent to which the government can control access depends on the nature of the relevant forum. *Id.*

Because a principal purpose of traditional public forums is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest. *Cornelius,*

*supra.* Similarly, when the government has intentionally designated a place or means of communication as a public forum, speakers cannot be excluded without a compelling governmental interest. *Id.* Access to a nonpublic forum, however, can be restricted as long as the restrictions are "reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983)).

Defendants Hoyer and the City of Allegan argue that Plaintiffs' claims against the City fail as a matter of law because Allegan High School is a nonpublic forum and the decision to stop Plaintiffs' event due to reports from Saleem's bodyguard of "death threats" and "Islamic extremists" was a reasonable safety precaution and a legitimate reaction to a potentially dangerous situation at a public high school (Dkt 119 at 13-19).

According to Plaintiffs, because the School District opened Allegan High School to the general public for a "free speech event," the School District created a designated public forum that is subject to the same strict scrutiny as restrictions in a traditional public forum (Dkt 120 at 20-21). Plaintiffs opine that Defendants' public-safety rationale is a "mere pretext" and that there was "zero evidence" of a safety risk (Dkt 120 at 21-24). According to Plaintiffs, the "true cause" of the closing of the event was to "comply[] with the demands of hecklers based on the viewpoint of the speaker and the content of the speech . . . valuing the heckler's veto over Constitutional freedoms of Plaintiffs" (*id.* at 25).

Defendants Hoyer and the City of Allegan's argument has merit.

"[S]chool facilities may be deemed to be public forums only if school authorities have 'by policy or by practice' opened those facilities 'for indiscriminate use by the general public,' or by

12

some segment of the public, such as student organizations." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484

U.S. 260, 267, 108 S. Ct. 562, 568, 98 L. Ed. 2d 592 (1988) (quoting *Perry*, 460 U.S. at 46-47).

Here, there are no allegations that the school was open for use by the general public; rather,

permission to rent the school was secured from the building principal, and there is no allegation that

permission was granted as a matter of course to all who sought it (Dkt 49, First Amend. Compl.

¶¶ 7-8). "This type of selective access does not transform government property into a public forum."

*Perry*, 460 U.S. at 47. Plaintiffs' allegations do not warrant the conclusion that the school facility

was designated a public forum subject to the same strict scrutiny as restrictions in a traditional public

forum.

Moreover, Plaintiffs' allegations do not state a plausible claim that access to the nonpublic

forum was unconstitutionally restricted. Plaintiffs allege in their First Amended Complaint that the

January 26, 2012 event was stopped due to "death threats" from "Islamic extremists" while other

events were occurring at the high school (Dkt 49, First Amend. Compl. ¶¶ 124, 162, 190). In

response to the motion at bar, Plaintiffs emphasize other allegations within their pleading—that the

death threats were not credible and that there was not any "real danger" posed by Saleem's presence

to those in the high school that evening (Dkt 120 at 23-24). Accepting as true that public officials

mistakenly assessed the credibility of the risk or the imminence of danger, Plaintiffs' allegations,

taken together, do not support the conclusion that the decision to stop the event was nonetheless

unreasonable. "[T]he government does not need to wait 'until havoc is wreaked to restrict access

to a nonpublic forum.'" *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364

F.3d 738, 751 (6th Cir. 2004) (quoting *Cornelius*, 473 U.S. at 810).

Similarly, Plaintiffs offer mere conclusory statements that the decision to close the event was an effort to suppress expression because public officials opposed Kaleem's view.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).  Plaintiffs' allegations do not state a plausible constitutional deprivation, even assuming arguendo that Plaintiffs identified a policy or custom upon which Defendant City of Allegan could be held liable under § 1983 for the purported constitutional deprivation.

In sum, Plaintiffs have stated redundant claims against Defendants Hoyer and the City of Allegan, and the claims against Defendant Hoyer in Counts I and II will be dismissed.  Further, Plaintiffs have not stated plausible claims to relief in Counts I and II against Defendant City of Allegan, and the claims against Defendant City of Allegan in Counts I and II will likewise be dismissed.

### C.  Defendants CAIR-MI, Walid, PFAW and Keegan's Motion to Dismiss

In Count IV of their First Amended Complaint, Plaintiffs allege Tortious Interference of Contract against Defendants CAIR-MI, Walid, PFAW and Keegan.  Count IV is the only claim in which these Defendants are named.  To state a Tortious Interference of Contract claim under Michigan law, Plaintiffs must demonstrate "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Gardner v. Heartland*

14

*Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013) (quoting *Badiee v. Brighton Area Sch.*, 695 N.W.2d 521, 539 (Mich. Ct. App. 2005)).

Here, Plaintiffs allege that the January 24, 2012 Letter "voiced strong disfavor for Kamal Saleem, offering defamatory remarks as to his authenticity as a speaker and dissenting to the viewpoint of his free speech" (Dkt 49, First Amend. Compl. ¶ 94). Plaintiffs claim that by sending the Letter to Superintendent Harness, Defendants "intentionally and improperly interfered" with "Plaintiffs' contract" to rent a room at the Allegan High School and, therefore, transmission of the Letter supports Plaintiffs' claim of a "tortious interference of contract" (*id.* ¶ 221).

Defendants CAIR-MI, Walid, PFAW and Keegan argue that these allegations fail to state a claim of Tortious Interference of Contract against them (Dkt 113 at 13). Defendants CAIR-MI, Walid, PFAW and Keegan argue that application of the *Noerr-Pennington* doctrine shields them from liability because they legally and reasonably petitioned the appropriate government official responsible for allowing Saleem to speak at Allegan High School in an effort to cancel his speech (*id.*).

Defendants CAIR-MI, Walid, PFAW and Keegan's argument has merit.

The right to petition, as guaranteed by the First Amendment of the United States Constitution, protects "the ability of the people to make their wishes known to their representatives." *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137-38 (1961) (rejecting an attempt to base a Sherman Act conspiracy on evidence consisting entirely of activities of competitors seeking to influence public officials); *see also United Mine Workers v. Pennington*, 381 U.S. 657, 669-72 (1965) (applying *Noerr* to hold that "[j]oint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition"). The knowing

15

infliction of injury from genuine petitioning does not render the campaign itself illegal because to hold otherwise would be "tantamount to outlawing all such campaigns." *Azzar v. Primebank, FSB*, 499 N.W.2d 793, 796 (Mich. Ct. App. 1993) (quoting *Noerr*, 365 U.S. at 143-44).

The doctrine espoused in *Noerr* and *Pennington* has been applied mainly in antitrust matters, matters concerning people's ability to influence the passage or enforcement of laws, and Plaintiffs argue that the doctrine is limited to the antitrust context and inapplicable here (Dkt 115 at 9-10). According to Plaintiffs, Defendants CAIR-MI, Walid, PFAW and Keegan have cast the doctrine "so broadly that they argue it merits special protections over and beyond the protections of the First Amendment Petition Clause" (*id.* at 5). The Court disagrees.

The Sixth Circuit has instructed that although the *Noerr-Pennington* doctrine was initially recognized in the antitrust field, "the doctrine is, at bottom, founded upon a concern for the First Amendment right to petition and, therefore, has been applied to claims implicating that right." *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007); *see also Azzar*, 499 N.W.2d at 796 ("the *Noerr-Pennington* doctrine is a principle of constitutional law that bars litigation arising from injuries received as a consequence of First Amendment petitioning activity, regardless of the underlying cause of action asserted by the plaintiffs").

Hence, in *Stachura v. Truszkowski*, 763 F.2d 211, 213 (6th Cir. 1985) rev'd on other grounds, *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986), the Sixth Circuit held that, under the First Amendment, a citizen who petitioned a school board to terminate a teacher was protected from liability. Likewise, in *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292, 298 (6th Circ. 1992), the Sixth Circuit held that, under the First Amendment, a teachers' union and its local managing agent who petitioned a school board to remove a principal was protected from liability.

16

Indeed, the Sixth Circuit has recognized that federal courts have by analogy applied the doctrine to claims brought under both state and federal laws, including common law claims of tortious interference.  *Campbell*, 509 F.3d at 790 (citing *Video Int'l Prod., Inc. v. Warner–Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1084 (5th Cir. 1988) (applying the doctrine to business tort claims, and citing cases)).  In short, "[t]here is simply no reason that a common-law tort can any more permissibly abridge or chill the constitutional right of petition than can a statutory claim such as antitrust."  *Video Int'l Prod.*, 858 F.2d at 1084.

Here, accepting as true the factual allegations contained in Count IV of Plaintiffs' First Amended Complaint, Plaintiffs have stated an example of a claim for which the *Noerr-Pennington* doctrine grants immunity:  private actors petitioning for—and, in fact, receiving—government action.  The Court agrees that the petition from Defendants CAIR-MI, Walid, PFAW and Keegan to the school superintendent constitutes an attempt to influence governmental action, a petition that is protected by the First Amendment.

Plaintiffs respond with three arguments, none of which compel a different conclusion.  First, Plaintiffs argue that the Letter did not seek to properly influence government action "but sought to improperly silence speech, alleging that the speaker was unworthy of speaking at Plaintiffs' event because he was a fraud" (Dkt 115 at 12).  However, "[a] citizen's right to petition is not limited to goals that are deemed worthy, and the citizen's right to speak freely is not limited to fair comments."  *Eaton*, 975 F.2d at 298; *see also Knology, Inc. v. Insight Commc'ns Co.*, 393 F.3d 656, 658-659 (6th Cir. 2004) (recognizing that except in very limited situations, the doctrine immunizes parties from antitrust or § 1983 liability when petitioning authorities to take official action, "even where the petitioning activity has the intent or effect of depriving another of property interests").  "Because

17

plaintiffs may easily allege that defendants knowingly and maliciously made false accusations, protecting such knowingly and maliciously made allegations provides breathing space for the First Amendment right to petition the government." *Azzar*, 499 N.W.2d at 796.

Second, Plaintiffs argue that even if the *Noerr-Pennington* doctrine applies, it provides only "immunity from liability" and does not confer a right of dismissal at the outset of a lawsuit (Dkt 115 at 8, 11). However, this argument also plainly lacks merit. *See, e.g., VIBO Corp, Inc. v. Conway*, 669 F.3d 675, 683-86 (6th Cir. 2012) (affirming the district court's ruling on a Rule 12(b)(6) motion that the defendants were immunized from suit under *Noerr-Pennington*).

Last, Plaintiffs argue that even if the doctrine applies, the activity of Defendants CAIR-MI, Walid, PFAW and Keegan falls within the "sham exception" to the doctrine (Dkt 115 at 13-14). Defendants reject Plaintiffs' sham-exception argument, emphasizing that "[t]he Letter expressed Defendants' legitimate opinions about the veracity of Mr. Saleem's claims, disagreed with Mr. Saleem's viewpoints, and asked that Mr. Saleem not be permitted to use public school property as a forum for his statements" (Dkt 113 at 14).

*Noerr* recognized what has come to be known as the "sham" exception to the rule: that "[t]here may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified." *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991) (quoting *Noerr*, 365 U.S. at 144). "A 'sham' situation involves a defendant whose activities are 'not genuinely aimed at procuring favorable government action' at all." *Id.* (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 n.4 (1988)). The Sixth Circuit has

indicated that the exception is "narrow," *Eaton*, 975 F.3d at 298; *Westmac, Inc. v. Smith*, 797 F.2d 313, 317-18 (6th Cir. 1986), with the "key" being an "improper interference" or "abuse" of governmental process, rather than a genuine attempt to influence official decision making, *Westmac, supra; Opdyke Inv. Co. v. City of Detroit*, 883 F.2d 1265, 1273 (6th Cir. 1989).

Here, Plaintiffs admit that the objective of Defendants CAIR-MI, Walid, PFAW and Keegan was to prevent the event from being held, that Defendants requested and urged that the "School District breach its Contract with the Plaintiffs and disallow Kamal Saleem from speaking at the free speech event" (Dkt 49, First Amend. Compl. ¶ 95).   Therefore, accepting as true the factual allegations contained in Plaintiffs' Count IV, the allegations describe a situation that falls outside of the sham exception. *See, e.g., VIBO Corp.*, 669 F.3d at 686 (affirming the district court decision granting the defendants dismissal under FED. R. CIV. P. 12(b)(6) where, by the "[p]laintiff's own admission, Manufacturer Defendants petitioned for a specific outcome from the government and succeeded, ... a situation that falls outside of the sham exception").

In sum, Plaintiffs have not stated a claim for relief in Count IV that is plausible on its face; rather, Plaintiffs' allegations state a claim from which Defendants CAIR-MI, Walid, PFAW and Keegan are immune.  Therefore, Defendants CAIR-MI, Walid, PFAW and Keegan are entitled to dismissal of Plaintiffs' Count IV against them.

### III. CONCLUSION

For the foregoing reasons, the Court determines that the "Joint Motion of Defendants Council on American-Islamic Relations, Dawud Walid, People for the American Way, and Michael B. Keegan for Dismissal Under FED. R. CIV. P. 12(b)(6), Pursuant to the *Noerr-Pennington* Doctrine" (Dkt 112), and "Defendants City of Allegan and Rick Hoyer's Motion to Dismiss

Plaintiffs' First Amended Complaint Under FED. R. CIV. P. 12(b)(6)" (Dkt 118) are granted.  An

Order will be entered consistent with this Opinion.


Date:  January 22, 2014                                      /s/ Janet T. Neff
                                                                      JANET T. NEFF
                                                                      United States District Judge

20