UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID AGEMA *et al.*,

Plaintiffs,

v

CITY OF ALLEGAN *et al.*,

Defendants.

_______________________________/

Case No. 1:12-cv-417

HON. JANET T. NEFF

**OPINION**

Now pending before the Court are cross-motions for summary judgment filed by the parties who remain in this action (Dkts 168 & 170). Having fully considered the parties' written briefs and accompanying exhibits and being otherwise familiar with the facts of this case, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court grants Defendants summary judgment (Dkt 168) and denies Plaintiffs' cross-motion for summary judgment (Dkt 170).

## I. BACKGROUND

This case arises from a January 26, 2012 event organized by Plaintiffs David Agema, Elizabeth Griffin, Mark Gurley, and Willis Sage at the Allegan High School in Michigan, an event that featured Kamal Saleem (Saleem) and Plaintiff Agema as speakers (Dkt 49, First Amend. Compl. ¶¶ 63, 6). According to Plaintiffs, "Saleem heads Koome Ministries, a nonprofit organization which teaches about the dangers of radical Islam" (*id.* ¶ 75). Plaintiffs allege that Saleem "has a unique perspective on the internal threat to America posed by Sharia law and radical Muslims as he was

once a Muslim involved in terrorist activities who has since transformed himself and converted to Christianity" (*id.* ¶ 76). On January 26, 2012, Plaintiff Agema was the Michigan State Representative for the 74th District serving in the Michigan House of Representatives, and Plaintiff Sage was a County Commissioner for the County of Allegan, Michigan (*id.* ¶¶ 12, 18). Plaintiff Griffin is identified as a Chapter Leader for the organization "ACT! for America" (*id.* ¶ 15). Plaintiff Gurley paid for the airfare of Saleem and his bodyguard to facilitate their attendance at the event (*id.* ¶ 17).

As of January 26, 2012, Kevin Harness was the Superintendent of the Allegan Public School District ("the School District") and Jim Mallard was the Principal of Allegan High School (Dkt 49, First Amend. Compl. ¶¶ 38-39). Commissioner Sage met with Principal Mallard for the purpose of renting a room at Allegan High School for the event (*id.* ¶ 67). Sage and Mallard agreed to the rental of a room at Allegan High School for Plaintiffs' event (*id.* ¶¶ 21, 72). Sage paid $90 to rent the room (*id.*).

Commissioner Sage also met with City of Allegan Police Chief Rick Hoyer (Dkt 49, First Amend. Compl. ¶ 83). Plaintiffs allege that Sage explained to Chief Hoyer that "Saleem is considered by some to be 'an ex-terrorist who has converted to Christianity'" (*id.* ¶ 85). "Sage requested the presence of two officers for the [] event" (*id.* ¶ 86).

In a letter dated January 24, 2012 and directed to Superintendent Harness and Principal Mallard, the Council on American-Islamic Relations, Michigan (CAIR-MI) and the President of People For The American Way (PFAW) requested that the School District disallow Saleem from speaking at the event (Dkt 49, First Amend. Compl. ¶¶ 91-99).

The January 26, 2012 event was scheduled to take place at Allegan High School from 6:00 p.m. to 9:00 p.m. City of Allegan police officers, including Chief Hoyer, arrived at Allegan High School before the event. Shortly before the event was to take place, a woman approached the police officers at Allegan High School and "stated that Kamal Saleem had a $25 million dollar bounty on his head" (Dkt 49, First Amend. Compl. ¶ 114). An Allegan police officer talked with Jones, Saleem's bodyguard, who did not deny that a bounty existed (*id.* ¶¶ 119-22). "Jones further stated that there had been death threats directed toward Kamal Saleem from Islamic extremists in the past" (*id.* ¶ 124). While the event was still in progress, Chief Hoyer ordered Plaintiffs to shut down the event (*id.* ¶ 135). Other events were occurring simultaneously in other locations within the Allegan High School building while Saleem was speaking (*id.* ¶ 162).

Plaintiffs initiated this civil rights action under 42 U.S.C. § 1983 with the filing of a Complaint on April 30, 2012 (Dkt 1). On January 8, 2013, with leave of the Court, Plaintiffs amended their Complaint. Their First Amended Complaint (Dkt 49) names nine Defendants: the City of Allegan, Chief Hoyer, the School District, Superintendent Harness, Principal Mallard, CAIR-MI, CAIR-MI Executive Director Dawud Walid (Walid), PFAW, and PFAW's Executive Director Michael B. Keegan (Keegan). In their First Amended Complaint, Plaintiffs assert four "claims for relief" under the following legal theories:

Count I: "Freedom of Speech—First Amendment against Defendants City; School District; Chief of Police, Rick Hoyer; Superintendent Kevin Harness; and Principal Jim Mallard"

Count II: "Freedom of Assembly—First Amendment against Defendants City; School District; Chief of Police, Rick Hoyer; Superintendent Kevin Harness; and Principal Jim Mallard"

Count III: "Breach of Contract against School District"

Count IV: "Tortious Interference of Contract against Defendants CAIR-MI, Dawud Walid, People For the American Way, and Michael B. Keegan"

(*id.*). The parties subsequently stipulated to dismissing Superintendent Harness from this case (Dkt 130).

On January 22, 2014, the Court issued an Opinion and Order, granting the joint motion of CAIR-MI, Walid, PFAW and Keegan for dismissal of Count IV under FED. R. CIV. P. 12(b)(6), pursuant to the *Noerr-Pennington* doctrine (Op. & Order, Dks 137 & 138). The Court also granted the motion of Defendants City of Allegan and Rick Hoyer to dismiss Counts I and II of Plaintiffs' First Amended Complaint against them under FED. R. CIV. P. 12(b)(6), finding that Plaintiffs stated redundant claims against Defendants Hoyer and the City, and that Plaintiffs had not stated plausible claims to relief in Counts I and II against the City (*id.*).

In July 2014, the School District and Principal Mallard ("the School District Defendants")[1] filed the instant motion for summary judgment (Dkt 168). The School District Defendants opine that this Court should dismiss Plaintiffs' Counts I and II against them on the same bases set forth

[1]Although the parties stipulated to dismissing Defendant Harness on December 6, 2013 (Dkt 130), the School Defendants include Harness as one of the current movants and continue to express some confusion about Harness' status in this case (Dkt 169 at 5, n.1). The parties' December 6, 2013 stipulation was made "[p]ursuant to the provisions of FED. R. CIV. P. 41(a)(1)(A)(*ii*)," which is the rule permitting the dismissal of an action against a party "Without a Court Order," i.e., a self-executing dismissal that does not require judicial approval to make it operative. *See Green v. Nevers*, 111 F.3d 1295, 1301 (6th Cir. 1997) ("[A] properly stipulated dismissal under [former Rule 41(a)(1)(A)(ii) ] is self-executing and does not require judicial approval ...."); 9 Charles Alan Wright *et al.,* Federal Practice and Procedure § 2363 (3d ed. 2013); *see also Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 541 (6th Cir. 2001) ("[Plaintiff's] unilateral notice was the legally operative act of dismissal pursuant to Rule 41(a)(1)(*i*), making the district court's subsequent order to the same effect superfluous."). *Cf. Meinecke v. H&R Block of Houston*, 66 F.3d 77, 82 (5th Cir. 1995) (district court's order granting summary judgment on claims previously dismissed pursuant to Rule 41(a)(1)(*ii*) stipulation was "void"), cited with approval in *Dillon-Barber v. Regents of Univ. of Michigan*, 51 F. App'x 946, 951 (6th Cir. 2002).

in the Court's prior Opinion, and that the Court should decline to exercise supplemental jurisdiction over the state-law claim in Count III (Dkt 169 at 5). Plaintiffs filed a response, seeking summary judgment in their favor (Dkt 170). The School District Defendants filed a reply to the response and a response opposing Plaintiffs' cross-motion for summary judgment (Dkt 171). Plaintiffs filed a reply to the School District Defendants' response (Dkt 172).

## II. ANALYSIS

### A. Standard of Review

Summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of an issue to be litigated at trial. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008). The court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. *Harbin-Bey v. Rutter*, 420 F.3d

571, 575 (6th Cir. 2005). Plaintiffs allege that Defendants Mallard and the School District deprived them of their rights under the First Amendment, specifically, their rights to Freedom of Speech (Count I) and Freedom of Assembly (Count II). The Court will examine the bases for the liability of each Defendant, in turn.

**1. Defendant Mallard**

Plaintiffs sued Defendant Mallard "in his official capacity as a principal" (Dkt 49, First Amend. Compl. ¶ 39). The School District Defendants argue that because the § 1983 claims are brought against Mallard in only his official capacity, the claims are redundant of Plaintiffs' claims against the School District and should therefore be dismissed (Dkt 169 at 35-36). Moreover, the School District Defendants argue that the facts demonstrate that Mallard did not make the decision to terminate the event and that he is protected by qualified immunity (*id.* at 37-42).

Plaintiffs, who concede that they have not alleged individual-capacity claims against Defendant Mallard, assert that the official-capacity claims against Defendant Mallard are "not redundant and challenge his decisions made pursuant to official School District policy" (Dkt 170 at 25 n.4). Plaintiffs reject that the qualified immunity doctrine is implicated here, and they point out that its application does not preclude awarding their requests for injunctive or declaratory relief (*id.*).

There is no dispute that the Allegan Public School District operates Allegan High School and is a public entity established pursuant to, and organized under, the laws of the State of Michigan (Dkt 49, First Amend. Compl. ¶ 34). "[U]nder *Monell* [*v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)], local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). "There is no longer a need

to bring official-capacity actions against local government officials." *Id.* "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky*, 473 U.S. at 165-66.

Accordingly, the Court agrees with the School District Defendants that Plaintiffs' claims against Defendant Mallard in this case are properly dismissed. *See, e.g., Faith Baptist Church v. Waterford Twp.*, No. 10-1406, 2013 WL 1489387 (6th Cir. Apr. 11, 2013) (unpublished) (explaining that the district court properly dismissed the official-capacity suit against a township's prosecuting attorney because the township, the real party in interest, was already a defendant in the lawsuit); *Glowacki ex rel. D.K.G. v. Howell Pub. Sch. Dist.*, No. 2:11-CV-15481, 2013 WL 3148272, at *10 (E.D. Mich. June 19, 2013) (dismissing the defendant-teacher for the reason that naming him in his official capacity is "redundant in a suit that also names the School District as a defendant") (citing *Briner v. City of Ontario*, 370 F. App'x 682, 699 (6th Cir. 2010) ("An official capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (internal quotation marks and alterations omitted); *Moore v. City of Harriman*, 272 F.3d 769, 776 (6th Cir. 2001) (en banc) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office ... as such, it is no different from a suit against the State itself.") (quoting *Will*, 491 U.S. at 71). Consequently, the Court declines to address whether Mallard would also be entitled to dismissal based on qualified immunity.

**2. Defendant School District**

a. *Policy or Custom*

Next, the School District Defendants argue that there is no basis for holding the School District liable (Dkt 169 at 28). Local governing bodies can be sued under § 1983 for monetary, declaratory, or injunctive relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. The liability of a local governing body under § 1983 depends solely on whether a plaintiff's constitutional rights have been violated as a result of a "policy" or "custom" attributable to the government. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). The Sixth Circuit has instructed that the plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010) (quoting *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005)).

The School District Defendants argue that Plaintiffs' § 1983 claims fail as a matter of law because there is no evidence of a school policy, practice or custom that violated Plaintiffs' rights, nor any evidence that Defendant Mallard has policy-making authority (Dkt 169 at 28-32). According to the School District Defendants, policy-making authority lawfully rests with the Board of Education, not its employees, MICH. COMP. LAWS § 380.1229, and the School District had had no prior occasion to address a situation requiring it to balance First Amendment rights with safety concerns (Dkt 169 at 42; Dkt 171 at 4-6, citing Harness, Mallard & Hammer Affs., Exs. G, H & J). The School District Defendants argue that the fact that Mallard arguably exercised discretion by

acquiescing to the police determination the event should be canceled does not provide a basis for finding the school district liable where Mallard is not a policy maker and had no duties or responsibilities in regard to approval of the application for use of school facilities or the supervision of an after-hours use of the facilities by an outside group (Dkt 169 at 31, 42).

In their First Amended Complaint, Plaintiffs allege that the School District "does not have any sort of written policy, procedure, or guideline that pertained to the closing of an event, such as the free speech event, or the factors to be considered prior to shutting down such an event" (Dkt 49, First Amend. Compl. ¶ 144). Plaintiffs further allege that the School District leaves "complete, unfettered discretion at the hands of its agents, servants, and/or employees to shut down an event, such as the free speech event, or the factors to be considered prior to shutting down such an event" (*id.* ¶ 145). Consistent with their pleading, Plaintiffs in their motion papers do not identify any specific policy or custom at issue. Rather, Plaintiffs argue that Defendants are liable under two theories: (1) "that the Allegan Public School District is liable for the final decision of William Hammer," the School District's Director of Building Operations; and (2) "that Jim Mallard is liable in his official capacity for following the standard practice of the Allegan Public School District" (Dkt 170 at 24-25).

"[A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91. "If the decision to adopt that particular course of action is properly made by that

government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

"On the other hand, the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* A plaintiff "must show that the School District *itself* is the wrongdoer." *Vereecke*, 609 F.3d at 403 (citation omitted; emphasis in original).

Turning first to Plaintiffs' theory of liability based on Hammer's role in this case, Plaintiffs emphasize that Hammer responded in the affirmative to Plaintiffs' counsel's deposition question, "Do you represent Allegan Public Schools in terms of being the final decision maker with room rentals?" (Dkt 170 at 25, citing Hammer Dep. [Dkt 170-2] at 14). Plaintiffs' argument based on this deposition excerpt is specious. "Discretion to act is not to be confused with policymaking authority; no municipal liability results where an official merely has discretion to act because subjecting a municipality to liability in such a situation would be 'indistinguishable' from respondeat superior liability." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993).

Plaintiffs also assert that Hammer "approved shutting down the event" (Dkt 170 at 25). However, Hammer specifically testified that "if we have issues or problems, you know, we work as a team, you know, he would be somebody that—I would be somebody that he [Principal Mallard] would—would contact with issues or problems" (Hammer Dep. at 12-13, Dkt 170-2 at 5-6). Plaintiffs' argument in this regard is also unpersuasive. That Mallard contacted Hammer on the

evening in question to discuss "a safety issue" related to the current rental does not give credence to Plaintiffs' theory for holding the School District liable. "The fact that a particular official ... has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 481-82. *See also Miller v. Calhoun Cnty.*, 408 F.3d 803, 814 (6th Cir. 2005) (indicating that the plaintiff "conflates decisionmaking with policymaking").

Similarly with regard to Plaintiffs' theory of liability based on Principal Mallard's role, Plaintiffs emphasize that "when there is no written School District policy, then it is the practice of the School District that the administrator in charge must make the decisions" (Dkt 170 at 27). However, like the evidence regarding Hammer's role, the evidence that Mallard, one of many principals in the school district under the supervision of the Superintendent, had discretion to act on the evening in question does not, without more, give rise to municipal liability based on an exercise of that discretion. "[M]ere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Miller*, 408 F.3d at 814 (6th Cir. 2005) (quoting *Feliciano*, 988 F.2d at 655). "[C]onsideration should ... be given to whether the employee ... formulates plans for the implementation of broad goals." *Hager v. Pike Cnty. Bd. of Educ.*, 286 F.3d 366, 376 (6th Cir. 2002) (quoting *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 914 (6th Cir. 1991)). In light of this standard, Plaintiffs' argument that Mallard's actions give rise to the School District's liability finds no support in the record.

b. *Constitutional Deprivation*

Even assuming arguendo that Plaintiffs have identified a policy or custom—or an "act of official government policy" by an authorized decision maker—upon which the School District Defendants could be held liable under § 1983 for the purported constitutional deprivation, Plaintiffs' evidence does not demonstrate a genuine issue of material fact in support of a constitutional deprivation that would warrant submitting this case to a trier of fact. "There can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act." *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.")).

The Supreme Court has adopted a forum analysis as a means of determining when the government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985). The extent to which the government can control access depends on the nature of the relevant forum. *Id.* Because a principal purpose of traditional public forums is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest. *Id.* Similarly, when the government has intentionally designated a place or means of communication as a public forum, speakers cannot be excluded without a compelling governmental interest. *Id.*

Access to a nonpublic forum, however, can be restricted as long as the restrictions are "reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view." *Cornelius, supra* (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). "[S]chool facilities may be deemed to be public forums only if school authorities have 'by policy or by practice' opened those facilities 'for indiscriminate use by the general public,' or by some segment of the public, such as student organizations." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) (quoting *Perry*, 460 U.S. at 46-47).

The School District Defendants argue that because there is no evidence showing that the School District provided more than selective access for use of the high school by outside groups, there is no reason for this Court to revisit its prior holding that the Allegan High School is a nonpublic forum (Dkt 169 at 34). The School District Defendants argue that there is also no evidence showing that the content of the speech in question motivated termination of the event (*id.*). The School District Defendants assert that the testimony in this case has instead consistently confirmed that it was the report of a bounty, death threats and security concerns that motivated the termination (*id.* at 35). Indeed, the School District Defendants opine that "[h]ad Defendants been motivated by an intent to muzzle Mr. Saleem based on the letter received from CAIR or objections voiced through telephone calls, they would have refused to allow the event to commence rather than cancel it mid-stream" (*id.*).

In response, Plaintiffs devote several pages to reiterating their prior arguments that because the School District opened Allegan High School to the general public for a "free speech event," the School District created a designated public forum that is subject to the same strict scrutiny as restrictions in a traditional public forum (Dkt 170 at 14-19). Citing testimony from Director of

Building Operations Hammer, Plaintiffs emphasize that the School "rented rooms to be generally open for use by the public, including Plaintiffs, to express a variety of messages and encompass a variety of activities" (*id.* at 17). According to Plaintiffs, "Defendants singled out Plaintiffs' event for exclusion from this forum based not only on its content, for Plaintiffs' inclusion of their chosen speaker Kamal Saleem (which is fatal), but its viewpoint in the form of silencing their chosen speaker Kamal Saleem (which is doubly fatal)" (*id.* at 16-17). Plaintiffs further assert that "Defendants' decision to shut down Plaintiffs' event was not curriculum related, not based on any specific or credible threat to public safety, and was based solely on a heckler's veto" (*id.* at 19).

As a threshold matter, the Court notes that some of Plaintiffs' arguments here—arguments, for example, challenging the School District's purported "content-based exclusion of speech" (Dkt 170 at 28)—are misplaced inasmuch as Plaintiffs seem to overlook that the School District agreed to rent a room as a venue for Plaintiffs' event. This is not a case involving a refusal to hold a event, or legislation to silence speech; rather, the unique facts at bar arise from the School District's contemporaneous decision to terminate an event in progress. Hence, several of the cases Plaintiffs cite in their motion papers are factually distinguishable on this basis (Dkt 170 at 23-24, citing *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622 (1994) (analyzing the constitutionality of must-carry provisions of Cable Television Consumer Protection and Competition Act); *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123 (1992) (analyzing the constitutionality of county's assembly and parade ordinance); *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1226 (9th Cir. 1990) (analyzing the constitutionality of a Coast Guard parade regulation)).

This Court previously decided, in resolving the City Defendants' motion to dismiss, that Plaintiffs' allegations did not warrant the conclusion that the school facility was designated a public

forum subject to the same strict scrutiny as restrictions in a traditional public forum (Op., Dkt 137 at 12-13). The Court determines that a contrary conclusion is not warranted on this record, which includes no evidence that the school was open for indiscriminate use by the general public. Hammer's testimony, in fact, supports the contrary conclusion: that not all applications to rent rooms at the school were approved (Dkt 170-2 at 4-5, Hammer Dep. at 7-9). The affidavits from school officials also corroborate that use of the school's facilities has been generally limited to use by youth sports groups, youth theater groups, businesses and a local church (Dkt 169 at 30, citing Exs. H & J).

Further, the School District Defendants have demonstrated that there is no genuine issue of material fact that access to the nonpublic forum was not unconstitutionally restricted. Referencing the testimony of the police officials, the School District Defendants argue that the January 26, 2012 event was stopped due to "death threats" from "Islamic extremists" while other events were occurring at the high school (Dkt 169 at 34, 36-37). In response, Plaintiffs assert that Defendants reacted to "rumor" and that there was "no specific threat" and "no evidence whatsoever that the bounty would be carried out at Plaintiffs' event" that evening in the high school (Dkt 170 at 22-23). Plaintiffs also opine that Defendants could have responded by "calling other law enforcement agencies for back-up, securing a barrier to restrict ingress and egress to the event, searching the building" (*id.* at 29-30).

Even accepting as true that the public officials mistakenly assessed the credibility of the risk or the imminence of danger, Plaintiffs have nonetheless failed to demonstrate any genuine issue of material fact regarding the reasonableness of Defendants' decision to stop the event. That Plaintiffs disagree with the decision, or the measure of the response, does not render the decision

unreasonable. "[T]he government does not need to wait 'until havoc is wreaked to restrict access to a nonpublic forum.'" *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 751 (6th Cir. 2004) (quoting *Cornelius*, 473 U.S. at 810).

The remainder of Plaintiffs' argument is mere conclusory opinion that the decision to stop the event was an effort to suppress expression because public officials opposed Kaleem's view. While the court must view the evidence and draw all reasonable inferences in favor of Plaintiffs, the nonmoving party, *Slusher*, 540 F.3d at 453, "[t]he plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct," *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). Here, Plaintiffs' own pleading and evidence supply several of the competing explanations for Defendants' decision to terminate the event, to wit: Plaintiffs' admission that Kaleem is an ex-terrorist, Plaintiffs' request for a police presence at the event, Kaleem's body guard's confirmation of the $25 million bounty on Kaleem's head, and Kaleem's body guard's acknowledgment of death threats made against Kaleem. Taken as a whole, the evidence in this case does not demonstrate a genuine issue of material fact in support of a constitutional deprivation, even assuming arguendo that Plaintiffs identified a policy or custom upon which the School District Defendants could be held liable under § 1983 for the purported constitutional deprivation. Rather, the evidence is so one-sided that the School District must prevail as a matter of law on Counts I and II.

In summary, Plaintiffs have stated redundant claims against Defendants Mallard and the School District, and the claims against Defendant Mallard in Counts I and II will be dismissed.

Further, Plaintiffs have failed to demonstrate a genuine issue of material fact precluding summary judgment in favor of the School District on Counts I and II.

**III. CONCLUSION**

For the foregoing reasons, the Court determines that Defendants Allegan Public School District and Jim Mallard's Motion for Summary Judgment (Dkt 168) is granted, and Plaintiffs' cross-motion for summary judgment in their favor (Dkt 170) is denied. Having dismissed both claims over which it has original jurisdiction, the Court, in its discretion, declines to exercise supplemental jurisdiction over the state-law breach of contract claim in Count III. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966); *see also Gamel v. City of Cincinnati,* 625 F.3d 949, 951 (6th Cir. 2010). An Order will be entered consistent with this Opinion. Further, because this Order resolves the last pending claim in this case, the Court will also enter a corresponding Judgment. *See* FED. R. CIV. P. 58.

Date: March 9, 2015

/s/ Janet T. Neff
JANET T. NEFF
United States District Judge